CITY OF HOBART and Common
Council of the City of Hobart,
Appellants-Plaintiffs,

v.

TOWN OF MERRILLVILLE, The Town
Board of Trustees of the Town of Merrillville, Standard Liquors, Inc., of Gary,
and Ribordy Drugs, Inc., Appellees-Defendants.

No. 3–1178A303.

Court of Appeals of Indiana,
Fourth District.

March 20, 1980.

Rehearing Denied April 16, 1980.

Thomas Greenberg and James A. Holcomb, Lucas, Clifford & Holcomb, Merrillville, Theodore L. Sendak, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellants-plaintiffs.

Fred M. Cuppy, Gerald K. Hrebec, J. Philip Klingeberger, Merrillville, for appellees-defendants.

CHIPMAN, Judge.

This is a suit for declaratory and injunctive relief by the City of Hobart against the Town of Merrillville. The City sought to have declared void the Town's Ordinance No. 74–18 which purported to annex certain real property located near the City of Hobart. Landowners in the annexed area were permitted to intervene. The trial court granted summary judgment in favor of the Town and Intervenors and the City appealed. We reverse.

The key to this case centers on the proper interpretation and application of Ind.Code 18–5–10–31. The City claims § 31 required the Town to obtain the City's consent before the territory in question could be annexed by the Town. According to the Town's asserted interpretation, the City's

consent was not mandated by the statute. Both parties agree the City's consent was not requested or given. The trial court apparently agreed with the Town's position though its findings and conclusions provide no hint us to the rationale for the decision.

The issues presented for our review are as follows:

I. Whether the City has properly perfected its appeal?

II. Whether the judgment was harmless error?

III. Did the City have standing to bring this suit?

IV. Was the Town required to obtain the City's consent pursuant to Ind.Code 18–5–10–31 as a condition of validity to the annexation ordinance?

V. Did the City unreasonably withhold its consent?

VI. Whether the record is adequate to permit appellate review of the Town and Intervenor's equal protection claims?

VII. Whether Ind.Code 18–5–10–31 violates art. I, § 25 of the Indiana constitution?

## I. PERFECTION OF THE APPEAL

The Town urges us to dismiss this case as a result of the City's failure to perfect a timely appeal. The City asserts its appeal was properly perfected. The City is correct.

The pertinent sequence of events in the trial court was as follows:

3/29/78 Summary judgment entered in favor of defendant Town of Merrillville and against plaintiff City of Hobart;

5/15/78 Motion to correct errors filed by City;

6/14/78 Motion to correct judgment filed by Town;

8/28/78 Order entered overruling City's motion to correct errors, granting Town's motion to correct judgment, and correcting judgment to extend in favor of defendants Standard Liquors, Inc., of Gary and Ribordy Drugs, Inc.;

9/21/78 Motion to correct judgment filed by City; and

9/21/78 Order entered granting City's motion to correct judgment, and correcting judgment to extend in favor of all defendants and against all plaintiffs.

Under this set of facts the Town argues the September 21, 1978, judgment was the judgment from which the appeal should have been taken and cites *State v. Deprez,* (1973) 260 Ind. 413, 296 N.E.2d 120. Under *Deprez* and its voluminous progeny the City would have been required to file additional motions to correct error each time the court changed its judgment in any way. However, in *P–M Gas and Wash Co., Inc. v. Smith,* (1978) Ind., 375 N.E.2d 592, the Supreme Court expressly held a party is not required to file a second motion to correct error. The resolution of this question therefore depends upon which case—*Deprez* or *P–M Gas*—was the controlling law at the time the court amended its judgment. *P–M Gas* was handed down April 27, 1978, roughly three weeks prior to the time the City's motion to correct error was filed and seven weeks before the court's first amendment of the judgment. Thus *P–M Gas* clearly controls this situation. *See Nehring v. Raikos,* (1979) Ind.App., 390 N.E.2d 1092; *Estate of Holderbaum v. Gibson,* (1978) Ind. App., 376 N.E.2d 1189. A second motion to correct error was not required and the City properly perfected its appeal.

## II. HARMLESS ERROR

■ In a rather novel argument the Town asserts the City has shown no prejudice as a result of the court's judgment and therefore argues if the judgment was erroneously granted in favor of the Town any error was harmless. We cannot accept even the basic premise of this argument. The Town has not cited us to any authority which supports an application of the harmless error rule to the rendering of judgments and we have found none. By its very nature the concept of harmless error applies to procedural and evidentiary error; it has little or no relationship to substantive errors, particularly judgments.

## III. STANDING

■ It is the Town's position that the City did not have standing to challenge the annexation and therefore the trial court properly refused to declare the ordinance void. We do not agree. First of all, the Declaratory Judgment Act specifically allows municipalities to bring an action under its provisions. Ind.Code 34–4–10–13. Secondly, unlike some other cases in which the parties merely ask the court for an advisory opinion, e. g., *City of Mishawaka v. Mahoney,* (1973) 156 Ind.App. 668, 297 N.E.2d 858, this case presents a true controversy between two adverse parties. Finally, the City fulfills the "effect upon the rights, status or other legal relationships" test of *Pitts v. Mills,* (1975) 165 Ind.App. 646, 333 N.E.2d 897.

■ The Town asserts the City had no standing because § 31 does not confer the power of consent upon the City. This argument attempts to prove too much. Under the Town's position, to establish standing the City would first have to prove the substance of its case, i. e., that the Town was required to obtain the City's consent as a condition of validity to its annexation ordinance. This is not the law. Nevertheless, as we hold in the next section, the City has the power of consent under the statute. The City clearly had standing to attack the annexation ordinance.

## IV. STATUTORY INTERPRETATION OF SECTION 31

■ The primary issue in this case concerns the interpretation of Ind.Code 18–5–10–31 and related statutes. The City claims the statute required the Town to obtain the City's consent as a condition of validity to the Town's annexation ordinance. The Town argues § 31 is inapplicable to the method by which it annexed the territory. We have carefully studied the statutes and conclude the City is correct.

Ind.Code 18–5–10–29 gives towns the authority to annex territory.

Annexation of contiguous territory by towns.—Towns may annex contiguous territory in the manner provided by sections 412 through 414 [18–5–10–30—18–5–10–32] of this article.

The procedure towns are to follow in annexing territory is outlined in Ind.Code 18–5–10–30.

Procedure.—Annexation of contiguous territory shall be made by the enactment of a town ordinance pursuant to the general procedure provided for the enactment of either separate or special annexation ordinances by cities and shall include a description of the territorial limits of the area. Owners of real estate situated outside, but adjacent to the corporate boundaries of any town may petition the town board to have real estate annexed in the same manner and to the same effect that owners of real estate may petition the common councils of cities to annex territory: Provided, That if any of the areas sought to be annexed lies within any county or counties other than the home county of the annexing town, any of the circuit or superior courts of any affected county shall have jurisdiction of any appeal.

The Town argues § 30 establishes two methods for annexation—one where the town, through its town board, initiates the annexation of one where landowners in contiguous territory request the town to annex their property. We agree. The clear language of § 30 allows either the town board or the landowners to initiate annexation proceedings.

Ind.Code 18–5–10–31 requires the consent of nearby cities as a condition to a valid annexation by a town.

Consent required prior to annexation.—If any part of the area sought to be annexed by a town lies within four [4] miles of any point on the perimeter of a city of the first class, or within three [3] miles of any point on the perimeter of a city of the second or third class, the consent of the common councils of such cities shall be obtained before annexation as a condition of validity: Provided, That in coun-

ties where a metropolitan plan commission is in existence, the consent of the metropolitan plan commission in lieu of the consent of the common councils of such cities shall be obtained.

It is undisputed that the City of Hobart is a third class city and that part of the territory included in the Town's annexation ordinance lies within three miles of the City's perimeter. Thus, on its face, the statute seems to require the City's consent to the Town's annexation.

The Town claims differently, however. It argues the consent requirement applies only to annexations initiated by a town itself and not where the property owners in the territory covered by the annexation ordinance are the initiating force behind the ordinance. If this interpretation is correct, the Town was not required to obtain the City's consent because ordinance 74–18 was, in fact, initiated by way of a petition filed by the landowners. However, we do not accept the Town's interpretation.

The Town rests its interpretation on two primary assertions. First it points to the language in § 30 which says, "Owners of real estate . . . may petition the town board to have real estate annexed *in the same manner and to the same effect* that owners of real estate may petition the common councils of cities to annex territory." Ind.Code 18–5–10–20 and 23 set forth the procedure for petition for annexation to cities. These statutes make no mention of a consent requirement. Thus the Town argues the City of Hobart's consent to its annexation ordinance was not required. This argument has some merit but we are not persuaded to adopt it. We think the legislature's reference to § 23 was clearly intended to permit contiguous landowners to have their property annexed to cities *or* towns. There is no evidence, however, of the legislature's intent to dispose of the consent requirement in annexations to towns merely because of the short hand reference to § 23.

The second basis for the Town's interpretation rests on language in § 31 itself. The statute says "if any part of the area *sought*

*to be annexed by a town"* lies within a certain distance of a city, that city's consent is required. The Town asserts the italicized language makes clear that the legislature intended the consent requirement to be triggered only when the town itself initiated the annexation proceedings, not when the landowners were the initiators. We do not agree. In any annexation proceeding a town passes an annexation ordinance and thus it is the town, as a municipal corporation, that is "seeking" the annexation. The town itself is the only body legally authorized to annex territory. Ind.Code 18–5–10–29. Whether the town board or the property owners are the initiating force is irrelevant.

To accept the Town's interpretation would be to ignore what we perceive as the clear language and structure of Ind.Code 18–5–10–29—32. Section 29 specifically states towns may annex territory pursuant to §§ 30 through 32. Thus the legislature clearly expressed an intent for the consent requirements of § 31 to be applied to all town annexations. To construe the legislation any other way would render § 29 mere surplusage and this we will not do.

The intent of Ind.Code 18–5–10–29—32 is ·clear. If the boundaries of a city fall within the prescribed distance from territory which a town wishes to annex the town must obtain the city's consent as a condition of validity to its annexation ordinance. The Town of Merrillville was thus required to obtain the consent of the City of Hobart. This the Town failed to do and, as a result, its annexation ordinance was an illegal act and is hereby voided.

## V.  UNREASONABLY WITHHELD CONSENT

■ The Town argues that if the City has the power of consent over the annexa-tion in question here, it was required by law to exercise that power in a reasonable manner. *See City of Indianapolis v. College Parkland Co.*, (1918) 187 Ind. 541, 118 N.E. 356. Assuming this to be true, the Town urges an affirmance because the City unreasonably withheld its consent. There are serious logical gaps in this assertion (for example, how could the City have withheld its consent when it was never asked for its consent) but we are prohibited from addressing its merits. This issue was not raised at trial by either party in any form and we will not consider it for the first time on appeal. *See Richardson v. Scroggham*, (1974) 159 Ind.App. 400, 307 N.E.2d 80.

## VI.  EQUAL PROTECTION ARGUMENTS

■ It is the position of the Town and Intervenors that Ind.Code 18–5–10–31 is unconstitutional if it is interpreted as we have held here. Having attempted to review appellees' contentions we are unable to agree. However, we must reluctantly decline to address the merits of two of the three constitutional arguments raised by appellees.

Two of appellees' constitutional arguments challenge section 31 on what amount to equal protection grounds. It is claimed the statute violates the Fourteenth Amendment to the federal Constitution (equal protection) and art. I § 23 (privileges and immunities) and art. IV § 23 (special laws) of the Indiana Constitution. All three of these constitutional provisions require similar considerations in their application.[1] For an appellate court to undertake the type of serious, scholarly review necessary to determine the constitutionality of a statute on these grounds, it must have before it a

---

1. The equal protection clause requires, at a minimum, a rational basis analysis. A similar test is applied to issues raised under the privileges and immunities clause of the Indiana constitution, art. I, § 23. *See Miles v. Dept. of Treasury*, (1935) 209 Ind. 172, 199 N.E. 372, 379. The test for special law under art. IV, § 23 has been stated thusly:

> As a general proposition, however, it is sufficient for purposes of §§ 22 and 23 of Art: 4 if the act in question treats all persons alike under the same or similar conditions and circumstances, and the classification is reasonable and naturally inherent in the subject matter.
>
> *Dortch v. Lugar*, (1971) 255 Ind. 545, 266 N.E.2d 25, 31.

record that is factually and legally complete. An equal protection analysis requires not only legal argument, but also an informed discussion of the surrounding factual situation and objectives of the challenged statute. All statutes are presumed rational and constitutional and the heavy burden of overcoming this presumption includes providing a record which makes the claimed constitutional defects apparent. *Marion County Election Board v. O'Brien*, (1960) 241 Ind. 36, 169 N.E.2d 287.

The record before us does not meet this criterion. The issue of the constitutionality of § 31 was first raised in the trial court by way of a memorandum in support of a summary judgment motion. The only response to this brief legal argument was a motion to strike. In rendering judgment, the trial court's order did not even mention the statute's constitutionality. Thus the record is devoid of any of the factual matter and consideration of the objectives of the statute necessary for this type of constitutional review. As our Supreme Court has said, "A court cannot be expected to find that the presumption of constitutionality was overcome in such a factual and legal vacuum." *Board of Commissioners of Howard County v. Kokomo City Plan Commission*, (1975) 263 Ind. 282, 330 N.E.2d 92, 101.

## VII. DELEGATION

 The Town and Intervenors also challenge the constitutionality of § 31 under Indiana Constitution, art. I, § 25, which provides:

> No law shall be passed, the taking effect of which shall be made to depend upon any authority, except as provided in this Constitution.

The record is sufficient to permit intelligent consideration of this issue.

Section 31 is said by appellees to be unconstitutional under this provision because a city can nullify an otherwise legal annexation by a town simply by refusing to consent to the annexation. In other words, it is argued § 31 becomes effective only upon action by a city government and not upon action by the legislature as is required by art. I, § 25.

We think the Town and Intervenors have misconstrued the phrase "taking effect." Section 31 and the rest of the statutes which comprise Acts 1969, ch. 239 became effective on January 1, 1970. Section 31 merely granted cities the power of consent with regard to certain annexations by towns. The exercise of that power does not render the existence of the power unconstitutional. *Martin v. Ben Davis Conservancy District*, (1958) 238 Ind. 502, 153 N.E.2d 125. *See Jones v. State ex rel. Indiana Livestock Sanitary Board*, (1960) 240 Ind. 230, 163 N.E.2d 605; *Johnson v. Board of Park Commissioners*, (1930) 202 Ind. 282, 174 N.E. 91.

By failing to obtain the statutorily mandated consent of the City of Hobart, the Town of Merrillville's annexation did not fulfill a "condition of validity" required of all such annexations. Ordinance Number 74–18 is therefore invalid.

Reversed.

MILLER, P. J., and YOUNG, J., concur.